IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MAURICE A. JOHNSON,

                  Plaintiff,                              OPINION AND ORDER

v.

                                                            19-cv-689-wmc

TRISHA ANDERSON,

                  Defendant.

*Pro se* plaintiff Maurice Johnson, formerly a prisoner at Columbia Correctional Institution ("Columbia"), is proceeding in this lawsuit on Eighth Amendment deliberate indifference and Wisconsin negligence claims against Nurse Trisha Anderson. Specifically, Johnson claims Nurse Anderson ignored his complaint that his state-issued boots were inadequate and required him to pay for personal shoes. Defendant Anderson filed a motion for summary judgment on the merits of plaintiff's Eighth Amendment claim, as well as dismissal of the state-law claim. (Dkt. #35.) In reply, Anderson withdraws the request for dismissal of the state-law claim; rather, she now asks that the court relinquish its jurisdiction over that claim.

The evidence of record establishes that Anderson did not consciously disregard Johnson's need for adequate footwear. Therefore, the court will grant Anderson's motion for summary judgment as to the Eighth Amendment claim, relinquish jurisdiction over Johnson's supplemental state-law claim against Anderson, and direct the clerk of court to enter judgment accordingly.

UNDISPUTED FACTS[1]

Plaintiff Maurice Johnson was in the custody of the Wisconsin Department of Corrections ("DOC") until December of 2021. In 2013, Johnson was transferred from Columbia to the Wisconsin Resource Center ("WRC"). In 2015, while Johnson was still at WRC, he underwent surgery to address his plantar fasciitis with flat feet and a bunion. A non-defendant, Dr. Corey Wesner, performed that surgery. A few months later, Johnson also underwent surgery on his left foot for a bunion.

In September of 2015, Dr. Wesner met with Johnson about his feet. At that time, Johnson reported that he was having difficulty with his shoes; in particular, he could not find a shoe that fit his orthotic inserts. Initially, Dr. Wesner recommended that Johnson be allowed to purchase a pair of shoes from a vendor not on the DOC's list of approved vendors. However, after reviewing a catalog from approved vendors, Dr. Wesner recommended that Johnson purchase a pair of shoes from the approved catalog.

A month later, Dr. Wesner met with Johnson again, complaining that his left foot pain had worsened. At that point, Dr. Wesner determined that Johnson's shoes from an approved vendor had not worked, so he recommended that Johnson receive shoes from an

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence of record as appropriate. Johnson submitted multiple documents in opposition to defendant's motion, but those submissions did not comply with the court's summary judgment procedures as none were formally offered in opposition to defendant's proposed findings of fact or in support of additional proposed findings of fact. (*See* dkt. #41-1.) While this court is not required to scour the record to discern whether a genuine dispute of fact exists, the court reviewed Johnson's submissions out of deference to his *pro se* status. Many of the documents Johnson submitted are not relevant, nor even contemporaneous, to the events comprising Johnson's claim against Anderson (*see, e.g., id.* at 1-9, 34-37, 40-44, 47-50), but the court has incorporated the few, material documents, especially those referenced in Johnson's response to defendant's proposed finding of fact.

outside vendor. After that meeting, a WRC doctor, Dr. Loria, met with Johnson and noted Dr. Wesner's recommendation that Johnson receive shoes from an outside vendor. However, she then learned from WRC staff that Johnson had never actually ordered the previously recommended shoes from the approved catalog. Therefore, Dr. Loria called Dr. Wesner, who confirmed that he had again recommended the shoes from an outside vendor because he was under the impression that Johnson had already tried the shoes from an approved vendor that Wesner had recommended in September. WRC staff also told Dr. Loria that Johnson had been seen working out in the gym without obvious discomfort, and that he had been working in the kitchen without wearing his gym shoes. For all these reasons, Dr. Loria did not approve Johnson for shoes from an outside vendor.

Dr. Wesner next met with Johnson on December 14, 2015, noting that although his bone healing had been delayed, it now appeared fully healed. Even so, Dr. Wesner still recommended that Johnson be allowed to purchase new shoes that cost more than $100. Under DOC policy, offsite providers like Dr. Wesner may recommend treatment plans for inmates, but only an advanced care provider at an institution can place an order for an inmate. When an inmate returns from an offsite provider, therefore, the inmate's institution provider will review any recommendation from an offsite provider and determine what treatment is medically necessary and appropriate in the institution setting. When Johnson returned from his appointment with Dr. Wesner, no provider at WRC entered an order authorizing Johnson to purchase shoes that cost more than $100.

Johnson was transferred back to Columbia, the next month, in January of 2016. Upon his transfer, defendant Trisha Anderson completed a review of his records. Anderson noted several appointments that needed to be scheduled, including a referral to podiatry.

3

However, Nurse Anderson did not personally meet with or examine Johnson at that time, and Johnson claims that Anderson failed to make an appointment for podiatry without citing any evidence, including that this was her responsibility or that she was asked to do so.

On May 25, 2016, Dr. Syed, a physician at Columbia, examined Johnson for complaints of foot pain. Johnson told Dr. Syed that he needed shoes from an outside vendor. However, Dr. Syed did not write that order; instead, he ordered Johnson an ice bag and Tylenol for his foot pain. In August of 2016, a nurse examined Johnson for complaints of bilateral foot pain and low back pain. Johnson again requested a new pair of medical shoes because his shoes no longer fit properly. The nurse noted a need for followup with staff about the request for new medical shoes. Later that day, yet another nurse sent Johnson a memorandum noting that: (1) the computer system did not show that Johnson had a medical restriction for orthotics or black Velcro medical shoes; (2) Johnson would need to contact laundry to be measured for a new pair of state boots; and (3) Johnson could purchase personal shoes from the approved vendors.

At the end of August, a third nurse saw Johnson again for continued reports of foot pain. Johnson told the nurse that he had ordered four different pairs of shoes from the approved vendors, but none fit his orthotics. In response, that nurse provided Johnson ibuprofen and muscle rub for his pain.

Up until that point, Nurse Anderson had still not been involved in Johnson's treatment for issues with his feet or shoes. However, Anderson did undertake at that point to figure out how to find shoes that would fit Johnson's orthotic needs. Anderson consulted with an approved vendor for orthotics and custom inserts, Aljans, as well as UW-Podiatry,

4

to determine which shoe would fit Johnson's orthotics. Both organizations stated that the Propet Village Walker shoe, found in the JL Marcus catalog, met the criteria necessary to fit Johnson's orthotics. Moreover, she determined that Johnson had the ability to order that shoe, and it was under the DOC's price limit.

While Johnson claims that the Propet Village Walker shoe also did not fit his orthotics, his "evidence" offered in support is a document related to his 2019 inmate complaint about footwear. (*See* dkt. #41-1, at 34.) That document suggests that in July of 2019, Johnson went to an outside vendor for a shoe fitting, where it was recommended that Johnson get a different shoe with extra depth. What this document does *not* show is that the shoe Johnson apparently took to that 2019 fitting was a Propet Village Walker shoe, much less that Propet did not make a shoe meeting the recommended depth. More importantly, neither than document nor any other evidence proffered by Johnson undermined Nurse Anderson's impression in August 2016 that Aljans and UW-Podiatry both felt the Propet could fit Johnson's orthotics needs, that shoe was available for him to order and, therefore, the shoe was an appropriate solution for Johnson's footwear concerns. Indeed, Anderson wrote a memo to Johnson confirming in August of 2016 that: (1) while his orthotics requirement did not fit his state-issued boots, Aljans and UW-Podiatry agreed that the Propet shoe would; and (2) Johnson should contact HSU once he had ordered and received those shoes, so that he could be scheduled for an orthotics refitting.

Johnson does not claim he responded to Nurse Anderson's memo, verbally or in writing, advising that the Propet Village Walker shoe would not work for him. Further, no one had authorized Johnson to purchase shoes that cost more than $100 or to purchase shoes from another outside vendor; likewise, Nurse Anderson attests without contradiction

that she did not have the authority to order shoes from an outside vendor, nor shoes that cost more than $100.

Johnson was transferred back to WRC in September 2016 and did not return to Columbia. Johnson underwent surgery a third time, apparently because there was a loose screw in his foot from one of his earlier surgeries.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Defendant seeks summary judgment on the merits of plaintiff's Eighth Amendment claims and ask that the court relinquish jurisdiction over plaintiff's negligence claim.

The Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976). To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). First, a medical need is "serious" if it: so obviously requires treatment that even a lay-person could recognize the need for medical attention; carries risk of permanent serious impairment if left untreated; results in needless pain and suffering; *or*

6

significantly affects an individual's daily activities. *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997). Second, "deliberate indifference" means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it, which is a decidedly high standard by itself. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). Thus, acts of deliberate indifference requires *more than* negligence, or even gross negligence, but require something less than *purposeful* acts. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

The threshold for deliberate indifference is met where: (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it. *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense").

Anderson is entitled to summary judgment because no evidence suggests that she consciously disregarded Johnson's need for adequate footwear. Johnson's arguments to the contrary fail on this record. First, Johnson appears to challenge how defendant Anderson handled his paperwork upon his arrival at Columbia in January of 2016. Yet no evidence shows that *Anderson* was responsible for scheduling him for a podiatry appointment, nor

7

even that Johnson was requesting to be seen upon his transfer to Columbia. Rather, the record shows that Nurse Anderson's role upon Johnson's transfer was limited to processing his paperwork to ensure continuity of care. Regardless, because no evidence suggests that Johnson came to Columbia with an urgent need to be seen, no reasonable trier of fact could find that Anderson's failure to facilitate an appointment with a podiatrist sooner demonstrated a conscious disregard of a serious medical need.

Second, Johnson contends that defendant Anderson should have pressed for approval of shoes from an outside vendor. As an initial matter, however, the record shows Nurse Anderson neither had the authority to order shoes from an outside vendor nor to permit him to purchase shoes that cost more than $100; only a DOC advanced care provider could authorize such an order. More important, there is no reasonable dispute that during the relevant time period, no advanced care provider at WRC or Columbia *believed* that Johnson needed shoes beyond those available in the DOC's approved catalogs. As a nurse, therefore, Anderson was entitled to rely on the opinions of WRC and Columbia physicians, each of whom *declined* to order Johnson shoes from an outside vendor, at least unless it was *obvious* that the shoes available to Johnson would not address his foot conditions. *See Rasho v. Elyea*, 856 F.3d 469, 478-79 (7th Cir. 2017) (even medical professionals in a non-treating role are "entitled to rely on the judgment of medical professionals treating an inmate"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on a doctor's advice unless it will obviously harm the patient). Here, Anderson had no reason to question the decision that Johnson did not need shoes from an outside vendor.

8

Even when Johnson's complaints to HSU about his footwear continued, Anderson's response does not support finding a conscious disregard of his pain or discomfort. To the contrary, the record shows that Anderson reached out to both the outside vendor Aljans *and* UW-Podiatry to discuss Johnson's footwear needs, and both entities informed her that that the Propet Village Walker shoe was appropriate for Johnson's orthotics. Nurse Anderson then communicated to Johnson that the Propet Village Walker shoe should work with his orthotics, and no evidence suggests that Johnson objected or otherwise indicated to Anderson that the approved shoe would not fit his orthotics.

Although Johnson now disputes that the orthotics fit the Propet Village Walker, his supporting evidence is 20<u>19</u> documentation related to a grievance Johnson brought about the orthotics not fitting in a pair of shoes. That grievance does *not* reference the Propet Village Walker shoe specifically, nor does the information in the grievance indicates that in August of 20<u>16</u> Anderson was aware that this shoe would not fit Johnson's orthotics needs. On this record, therefore, no reasonable jury could conclude that Anderson disregarded Johnson's need for adequate footwear, and defendant Anderson is entitled to summary judgment on Johnson's Eighth Amendment claim against her.

What remains is Johnson's Wisconsin negligence claim against Anderson, arising from the same set of facts. "The normal practice is to relinquish jurisdiction over a supplemental claim when the claim is dismissed before trial, but if the supplemental claim is easily shown to have no possible merit, dismissing it on the merits is a time saver for everybody." *Korsen v. Local Union 705*, 75 F.3d 285, 288-89 (7th Cir. 1996). While Anderson raises an argument that Johnson failed to file a notice of claim as required under Wisconsin law, she also concedes that this court has previously concluded an exception to

the notice of claim requirements for medical malpractice claims applies to state-law negligence claims against a nurse. *See Wand v. Kramer*, No. 18-cv-500-wmc, dkt. #243 (W.D. Wis. Nov. 23, 2021). Because it is not readily apparent that Johnson's negligence claim against Anderson fails as a matter of law on the merits, therefore, the court must relinquish jurisdiction over Johnson's supplemental state-law claim against Anderson, and the court will dismiss that claim without prejudice.

### ORDER

IT IS ORDERED that:

1. Defendant Trisha Anderson's motion for summary judgment (dkt. #35) is GRANTED.

2. Plaintiff Maurice Johnson's Eighth Amendment claim against Anderson is DISMISSED with prejudice.

3. The court relinquishes jurisdiction over plaintiff's state-law claim against Anderson, which is DISMISSED without prejudice.

4. The clerk of court is directed to enter judgment and close this case.

Entered this 13th day of January, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge